*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RONDELL LAMAR WATTERS,

        Defendant-Appellant.

UNPUBLISHED
July 15, 2026
1:47 PM

No. 371791
Wayne Circuit Court
LC No. 22-007153-01-FC

Before: RICK, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his bench-trial convictions of second-degree murder, MCL 750.317; disinterment or mutilation of a dead body, MCL 750.160; and tampering with evidence, MCL 750.483a(6)(b). The trial court sentenced defendant to 35 to 70 years' imprisonment for his second-degree murder conviction and 23 months to 10 years' imprisonment for each of his other convictions. We affirm.

## I. FACTUAL BACKGROUND

Defendant's convictions arise from the murder and dismemberment of his girlfriend, Latima Warren. Warren gave birth to their son, LW, in October 2021. On December 23, 2021, Gwendolyn Parks, the grandmother of one of Warren's other children, went to a house on Vaughan Street in Detroit, Michigan, where Warren lived with defendant. Defendant told Parks that he had not seen Warren in a couple of days. When Warren failed to contact Parks on Christmas, Parks repeatedly returned to the house looking for her. Defendant answered the door each time but denied having contact with Warren. Defendant never reported Warren missing. Parks reported Warren missing on December 28, 2021.

Detroit Police Officers Roy Bunnich and Joshua Dennard went to the Vaughan Street house to conduct a wellness check. Defendant allowed the officers to enter and search the house, but the officers did not find Warren. Detroit Police Officer Matthew Ruiz was assigned to investigate the victim's disappearance. He contacted the Detroit Medical Center, the Wayne County Medical Examiner's Office, and Warren's family. While the search for Warren continued, Officer Ruiz learned that money had been deposited into Warren's Bridge Card account, but the card had not

-1-

been used. On January 14, 2022, Officer Ruiz spoke with defendant at the Vaughan Street house. Defendant claimed that he last saw Warren around December 20, 2021. According to defendant, Warren was "cussing him out" during an argument before she gathered her belongings and left with LW. Defendant claimed that he later heard a baby crying and found LW in a car seat beside the house, but Warren was gone. Defendant again allowed Officer Ruiz to search the house.

On January 16, 2022, Detroit Police Sergeant Shannon Jones submitted an affidavit in support of a search warrant for the Vaughan Street house. When officers executed the warrant, they immediately smelled decomposition. Officers found Warren's head, arms, torso, and legs wrapped in separate garbage bags, with disposable diapers interspersed among the layers. Officers also recovered latex gloves and a full-body protective suit. Both items tested positive for blood, and DNA testing revealed the presence of defendant's and Warren's DNA. Officers obtained surveillance footage showing defendant purchasing bleach, garbage bags, and diapers.

The autopsy listed the cause of death as "multiple blunt trauma," and documented injuries to Warren's eyes, nose, head, arms, legs, back, buttocks, and thighs. Dr. Carl Schmidt, the former Wayne County chief medical examiner, opined that Warren would not have died immediately from her injuries but likely died a few hours after the blows to her head. Dr. Schmidt believed that swelling of the brain ultimately caused her death. The autopsy established that Warren was dismembered postmortem.

At trial, Parks testified that defendant and Warren did not have a good relationship and described three occasions when their arguments became physical. Parks testified that, aside from one occasion when she heard a male voice, she never saw anyone other than defendant and LW at the Vaughan Street house. Parks also testified that, when she visited the house on December 27, 2021, the smell of cleaning products was so strong that it made her eyes water. Following a bench trial, the trial court convicted defendant of second-degree murder, disinterment or mutilation of a dead body, and tampering with evidence.

Defendant's minimum-sentence guidelines range was 225 to 357 months' imprisonment. The trial court found that this was a uniquely brutal case and imposed an out-of-guidelines minimum sentence of 35 years' imprisonment for defendant's second-degree murder conviction. This appeal followed.

## II. ANALYSIS

## A. DIRECT APPEAL

Defendant first argues that the trial court abused its discretion by imposing an out-of-guidelines sentence. We disagree.

We review an out-of-guidelines sentence for reasonableness. *People v Lampe*, 327 Mich App 104, 125; 933 NW2d 314 (2019). A sentence is unreasonable if the trial court abused its discretion by violating the principle of proportionality. *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017). The principle of proportionality requires "sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 474; 902 NW2d 327 (2017) (quotation marks and citation omitted). When imposing a departure sentence, the trial court must explain why the

sentence imposed is more proportionate than a sentence within the guidelines range. *Dixon-Bey*, 321 Mich App at 525.

Defendant's minimum-sentence guidelines range was 225 to 357 months' imprisonment, or 18.75 to 29.75 years. The trial court imposed a minimum sentence of 35 years' imprisonment. Defendant argues that the trial court relied on circumstances already accounted for by the guidelines. Although a trial court should not rely on a characteristic already accounted for in the guidelines without explanation, a departure may be warranted when "the characteristic has been given inadequate or disproportionate weight." *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008).

Defendant first argues that the trial court improperly relied on his mutilation of the victim's body because he was separately convicted of that offense. However, the trial court did not rely solely on the existence of that conviction. It found that the guidelines did not adequately account for the particular brutality of defendant's conduct, including that defendant cut the victim's body into pieces while their infant son was in the house. Defendant responds only by citing an unpublished Minnesota case and asserting that "the mutilation that the sentencing judge refers to as reason for a departure is in essence no more egregious than whatever amounts to mutilation" under the statute of conviction. This cursory argument does not establish that the trial court abused its discretion. See *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004); *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

Defendant also argues that the trial court improperly considered his efforts to conceal the victim's death because he was assessed 10 points for offense variable (OV) 19, which is scored for "interference with the administration of justice. . . ." MCL 777.49. A court will assess 10 points if "the offender otherwise interfered with or attempted to interfere with the administration of justice. . . ." MCL 777.49(c). "OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016).

Here, the trial court explained that defendant did more than lie about the victim's whereabouts: he dismembered her body and attempted to conceal the evidence. The trial court determined that the guidelines did not adequately account for the brutality and depravity of defendant's conduct. Defendant has not shown that the trial court's explanation was inadequate or that his sentence fell outside the range of reasonable and principled outcomes. Accordingly, defendant is not entitled to resentencing.

## B. STANDARD 4

Defendant raises two additional claims in a Standard 4 brief. See Supreme Court Administrative Order No. 2004-6. Neither warrant relief.

### 1. SEARCH-WARRANT AFFIDAVIT

Defendant argues that the affidavit supporting the search warrant for the Vaughan Street house was a "bare bones" affidavit that did not establish probable cause. We disagree.

We afford deference to a magistrate's determination that probable cause supports a search warrant. *People v Czuprynski*, 325 Mich App 449, 469; 926 NW2d 282 (2018). Our task is to determine "whether a reasonably cautious person could have concluded that there was a 'substantial' basis for the finding of probable cause." *People v Unger*, 278 Mich App 210, 243-244; 749 NW2d 272 (2008). The affidavit supporting the warrant must be read in a common-sense and realistic manner. *Id.* at 244.

The affidavit in this matter identified the Vaughan Street house as Warren's residence and stated that defendant was Warren's boyfriend and the father of LW. The affidavit explained that Warren had not contacted her family on Christmas or her birthday. It stated that efforts to locate her through medical and wellness facilities were unsuccessful and that deposits to her Bridge Card account remained unused. It also stated that defendant claimed LW had been found outside the house in a car seat several days earlier, but defendant did not report Warren missing. The affidavit sought evidence related to Warren's disappearance, including blood or bodily fluids, possible weapons, and documents showing the occupants of the home and the victim's recent activities.

Regardless, even if we were to determine the affidavit "did not establish probable cause, the officer's reliance on the issuing judge's finding of probable cause nevertheless was objectively reasonable and, thus, the fruits of the search nevertheless would not be suppressed." *Czuprynski*, 325 Mich App at 471. See also *People v Goldston*, 470 Mich 523, 538-543; 682 NW2d 479 (2004). The good-faith exception to the exclusionary rule "renders evidence seized pursuant to an invalid search warrant admissible as substantive evidence in criminal proceedings where the police acted in reasonable reliance on a presumptively valid search warrant that was later declared invalid." *People v Hellstrom*, 264 Mich App 187, 193; 690 NW2d 293 (2004). See also *Goldston*, 470 Mich at 525-526; *United States v Leon*, 468 US 897, 919-921; 104 S Ct 3405; 82 L Ed 2d 677 (1984). Put differently,

> [r]eliance on a warrant is reasonable even if the warrant is later invalidated for lack of probable cause, except under three circumstances: (1) if the issuing magistrate or judge is misled by information in the affidavit that the affiant either knew was false or would have known was false except for his or her reckless disregard of the truth; (2) if the issuing judge or magistrate wholly abandons his or her judicial role; or (3) if an officer relies on a warrant based on a "bare bones" affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. [*Czuprynski*, 325 Mich App at 472.]

Defendant has not established that any of those circumstances exist. He argues that the affidavit omitted the fact that officers searched the house on January 14, 2022. This belies reality. The supporting affidavit stated that Officer Ruiz "checked the location again to see if [Warren] had returned with negative results." Defendant also contends that the magistrate "wholly abandoned its duty to ensure that the affidavit met the requirements effectively allowing officers to write their own warrant." The record contains no support for that assertion. Additionally, the affidavit was not so deficient that reliance on the warrant was unreasonable. The affidavit described the investigation into Warren's disappearance, identified the house as her residence, and identified evidence related to her disappearance that officers reasonably believed could be found there. Accordingly, even if the affidavit did not establish probable cause, which we find it did, the good-faith exception would apply.

## 2. SUFFICIENCY OF THE EVIDENCE

Defendant also argues that the prosecution presented insufficient evidence to support his second-degree murder conviction. We disagree.

"This Court reviews de novo defendant's challenge to the sufficiency of the evidence." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). On appeal, this Court views "the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id*. "The standard of review is deferential; a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015) (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010).

Historically, the elements of second-degree murder were: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Wafer*, 509 Mich 31, 40; 983 NW2d 315 (2022) (quotation marks and citation omitted). However, this Court has clarified that the fourth element, "without justification or excuse," is actually "part of the 'cluster of ideas' of second-degree murder," not an element of the offense. *People v Spears*, 346 Mich App 494, 517; 13 NW3d 20 (2023).

Defendant specifically argues that no evidence was presented to show he assaulted the victim or otherwise caused Warren's death. Once again, the evidence proves otherwise. Warren lived with defendant, and Parks testified that their relationship was marked by discord and physical violence. Parks repeatedly visited the Vaughan Street house after Warren disappeared. She saw only defendant and LW. Warren's dismembered body was found inside the house. Parks smelled cleaning products strongly enough to make her eyes water, surveillance footage showed defendant purchasing bleach, garbage bags, and diapers, and both Warren's and defendant's DNA were found on gloves and a protective suit recovered from the house. The trial court could reasonably infer from this evidence that defendant killed Warren and attempted to conceal the crime. See *Bennett*, 290 Mich App at 472.

Defendant emphasizes that officers did not observe signs of a struggle, did not see bruises on defendant, and did not initially smell decomposition. But "the prosecution need not disprove all theories consistent with defendant's innocence; it need only introduce sufficient evidence to convince a reasonable jury of its theory of guilt despite the contradictory theory or evidence a defendant may offer." *People v James*, 327 Mich App 79, 89; 932 NW2d 248 (2019) (quotation marks and citation omitted). Viewed in the light most favorable to the prosecution, the evidence permitted a rational trier of fact to find beyond a reasonable doubt that defendant caused Warren's death.

Affirmed.

/s/ Michelle M. Rick
/s/ Christopher M. Murray
/s/ Stephen L. Borrello